S. SPENGLER *v.* H. J. TROWBRIDGE, CITY CLERK, ET AL.

MUNICIPAL CORPORATION. *City of Vicksburg. Charter. Improvement of harbor. Appropriation of money.*

The provisions of the charter of the city of Vicksburg, which provide for a wharf and habor master and define his duties, and confer upon the city power " to erect, repair, and regulate public wharves and docks and fix the rates of wharfage thereat," do not confer upon the city any power, express or implied, to incur expenses for the purpose of erecting a harbor or improving one by obtaining an increased supply of water. Hence, the city authorities have no power, under such provisions, to pay money out of the city treasury for the expenses of persons sent to procure aid from Congress for the improvement of the city harbor.

APPEAL from the Chancery Court of Warren County.

HON. WARREN COWAN, Chancellor.

Formerly the Mississippi River ran immediately by the city of Vicksburg, but by a change in its course in the year 1877 it left that city about a mile from its channel, thereby greatly damaging the harbor there, which became dependent upon a lake that for some years prior to the inception of this controversy, in January, 1884, has been navigable only a part of each year. On the 22d day of January, 1884, at an informal meeting of the board of mayor and aldermen, together with a committee of citizens of the city of Vicksburg, with the view of taking some action to restore the harbor of the city, a committee of citizens was appointed to go to Washington and urge Congress to make an appropriation out of the national treasury to aid in the restoration of the harbor at Vicksburg. Subsequently the board of mayor and aldermen made an appropriation of five hundred dollars, to be paid out of the city treasury to defray the expenses of the committee to be incurred in the performance of the duty intrusted to them. The

committee were about to draw the amount of the appropriation, when S. Spengler, a citizen and taxpayer of Vicksburg, filed the bill in this cause against H. J. Trowbridge, city clerk, and T. G. Birchett, treasurer of the city of Vicksburg, and obtained an injunction thereon prohibiting the payment of the five hundred dollars appropriated as above stated. The bill set forth the facts in connection with the appropriation of the five hundred dollars, and charged that the board of mayor and aldermen had no power under the city charter to make such an appropriation. The defendants demurred to the bill and the court sustained the demurrer; whereupon the complainant appealed. Such parts of the city charter as have any bearing upon the question here presented are recited in the opinion of the court.

*H. C. McCabe*, for the appellant.

The city of Vicksburg is a municipal corporation. It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others.: *First*, those granted in express words; *second*, those necessarily or fairly implied in or incident to the powers expressly granted; *third*, those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation and the power is *denied*. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act or make any contract or incur any liability not authorized thereby. All acts beyond the scope of the powers granted are void. 1 Dillon on Mun. Cor. 173, 3d ed.

The charter of the city of Vicksburg confers no power expressly or by implication for the appropriation here under consideration.

Our own supreme court has said in reference to implied powers, " And a power cannot be implied unless it be so necessary to the enjoyment of some right expressly granted that without it that right would fail." *McIntyre* v. *Ingraham*, 6 G. 25; *Commercial Bank, Manchester,* v. *Nolan*, 7 How. 508; *Abby* v. *Billup*, 6 G. 618; *M. & O. R. R. Co.* v. *Frank*, 41 Miss. 494.

There is not a right conferred upon the city of Vicksburg by its charter to which the one they undertake here to exercise is germane even in a remote degree; not a right or a power given therein that would fail or be prejudiced if the one claimed here were not exercised. In short, there is no right or power of a public nature dependent in any way upon the right of the city to appropriate money to the restoration of its harbor.

*J. D. Gilland,* for the appellees.

*First.* It is admitted that municipal corporations have only such powers as are expressly conferred on them by the legislature, and such implied powers as are necessary or proper to exercise or carry into effect those powers that are express. *Sykes* v. *Columbus,* 55 Miss. 115.

*Second.* By § 7 of the city charter of 1876 (being the same in that respect as § 7 of the charter of 1884, see Acts of 1884, page 426), a wharf and harbor master is made one of the officers of said city.

By § 18 of charter of 1876 (being same as § 18 of charter of 1884, see Acts of 1884, page 433), the duties of that office are declared. He "shall faithfully and promptly collect and pay over to the city treasury at the expiration of each week all wharfage and landing dues accruing to the city. He shall keep at one of the wharf boats of the city * * * the 'City Landing Register,' etc."

By art. 17 of § 28 of the charter of 1876 (being same as art. 20 of § 28 of charter of 1884, see Acts of 1884, page 440), the "Mayor and Aldermen of the City of Vicksburg" was authorized "to erect, repair, and regulate 'public wharves and docks, and fix the rates of wharfage thereat, and to regulate the stationing, anchorage, and mooring of vessels or other water-crafts within the limits of the city."

*Third.* Without a harbor the city has no use for a wharf and harbor master.

Without a harbor it would be a vain thing for the city to erect or repair public wharves and docks.

Without its harbor the city must lose a large and profitable revenue heretofore derived from wharfage dues.

The municipal corporation has, by the sections of its charter above mentioned, the implied powers of legislating in reference to its harbor, and of expending money for its improvement.

CAMPBELL, C. J., delivered the opinion of the court.

We cannot discover in the charter of the city of Vicksburg any authority for an appropriation of money to defray the expenses of persons representing the city in an effort to procure from Congress aid to restore to the city its harbor, which has been "almost totally destroyed" by the course of the Mississippi River. The charter was passed on the assumption of the existence of conditions which made it proper for the city to have a wharf and harbor master, and define his duties, and power is conferred on the city "to erect, repair, and regulate public wharves and docks and fix the rates of wharfage thereat," etc., but there is no countenance for the proposition that the city may incur expense, to be met by taxation, for the purpose of creating a harbor or improving it by obtaining an increased supply of water. The power conferred by the charter looks to the utilization by the city of its position as situated on a navigable river, and does not embrace the idea of creating a harbor by an adequate expenditure, even if the result was assured. It will hardly be contended that the city could incur a valid debt of millions of dollars to divert the Yazoo River or otherwise to bring an ample supply of water to the former bed of the Mississippi River, if it was demonstrable that the desired end would be attained, and, surely, if expenditure cannot lawfully be made directly for the object, it cannot be lawful to expend money to induce Congress or any other body to do what the city may not do.

The expenditure proposed to be made, and which was enjoined by this bill, was an unauthorized and unlawful one, and the demurrer to the bill should have been overruled.

*The decree sustaining the demurrer is reversed and the demurrer is overruled, and the cause remanded with leave to the defendants to answer in thirty days after the mandate herein shall reach the office of the clerk of the court below. The injunction will be continued in force.*